**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JAIME OTERO,                          )
           **Plaintiff**      )
                  )      **C.A. 08-282 Erie**
     **v.**                        )
                  )      **Magistrate Judge Baxter**
THOR CATALOGNE, et al.,               )
          **Defendants.**    )

**OPINION AND ORDER[1]**

Magistrate Judge Susan Paradise Baxter.

## I.    INTRODUCTION

### A.    Relevant Procedural History

On or about October 24, 2008, Plaintiff Jaime Otero, an individual formerly incarcerated

at the Bucks County Prison ("BCP"), filed this civil rights action pursuant to 42 U.S.C. § 1983.[2]

Named as Defendants are: PTS of America, LLC, a private transportation company that was

retained by Bucks County to transport Plaintiff back and forth between SCI-Forest and BCP

("PTS"); Thor Catalogne, an official at PTS ("Catalogne"); Stephen Etter, a driver employed by

PTS ("Etter"); Patrick S. Canada, a driver employed by PTS ("Canada"); Bucks County,

Pennsylvania ("Bucks County"); Michelle Henry, former District Attorney of Bucks County

("Henry"); Steven Jones, Assistant District Attorney of Bucks County ("Jones"); Harris

Gubernick, Director of Corrections at BCP ("Gubernick"); Dale Haring, Case Manager

Supervisor at BCP ("Haring"); and Edward J. Donnelly, Sheriff of Bucks County ("Donnelly").

After filing his original complaint [ECF No. 7], Plaintiff subsequently filed an amended

complaint on December 1, 2009 [ECF No. 60], and a second amended complaint on January 26,

---

[1]

All parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 2, 63, 64, 65, 66].

[2]

Plaintiff is currently housed at Lycoming House, a halfway house located in Philadelphia, Pennsylvania.

2010 [ECF No. 69]. The second amended complaint subsumes the allegations of Plaintiff's first two complaints, and is deemed to be the operative statement of Plaintiff's claims. In his second amended complaint, Plaintiff raises claims under the fifth, sixth, eighth and fourteenth amendments to the United States Constitution, as well as state law tort claims of negligence and intentional infliction of emotional distress, arising from injuries he sustained in a motor vehicle accident involving the PTS vehicle in which he was being transported from BCP to SCI-Forest. As relief for his claims, Plaintiff seeks declaratory and injunctive relief and monetary damages.

On February 12, 2010, Defendants Bucks County, Donnelly, Gubernick, Haring, Henry, and Jones filed a motion to dismiss [ECF No. 71], asserting that Plaintiff's second amended complaint fails to state a claim against them upon which relief may be granted and should be dismissed or, in the alternative, that this action should be transferred to the United States District Court for the Eastern District of Pennsylvania. On February 15, 2010, Defendants Etter, Canada, PTS, and Catalogne filed separate motions to dismiss [ECF Nos. 73, 75, 77, 79], asserting that they are not "state actors" subject to suit under 42 U.S.C. § 1983, and that Plaintiff has failed to state a claim against them upon which relief may be granted in any event. Plaintiff has since filed a response to each of Defendants' motions. [ECF Nos. 82-86]. This matter is now ripe for consideration.

### B. Relevant Factual History[3]

At all times relevant to this case, Plaintiff was serving a sentence of one to five years at SCI-Forest for Driving Under the Influence, and was also awaiting trial on new charges of Simple Assault and Possession of a Controlled Substance in or around Bucks County, Pennsylvania. (Id. at ¶ 4). On or about March 20, 2008, officials for Defendant Bucks County retained Defendant PTS to transport Plaintiff from SCI-Forest to BCP, because Plaintiff had a scheduled hearing on March 24, 2008, and a scheduled trial date of April 14, 2008, with regard

---

[3]

The factual history set forth herein is gleaned from Plaintiff's allegations, which are accepted as true for purposes of deciding Defendants' motions to dismiss. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).

to the new charges. (Second Amended Complaint, ECF No. 69, at ¶¶ 17, 18).  On April 10, 2008, at around 11:00 p.m., Defendant Canada arrived at BCP to pick up Plaintiff for transportation back to SCI-Forest. (Id. at ¶ 19).  Plaintiff protested, informing Defendant Canada and BCP correctional officers that he had a trial date on April 14; however, Plaintiff was told that he could not refuse the transport back to SCI-Forest. (Id.).  Sometime during the early morning hours of April 11, 2008, Defendant Etter relieved Defendant Canada as the driver of the transport vehicle. (Id. at ¶ 20, 56).  At around 5:00 a.m., Defendant Etter allegedly "failed to maintain control" of the vehicle and caused it to "collide with the side of a hill." (Id. at ¶¶ 20, 59).  As a result of the accident, Plaintiff allegedly suffered "severe injuries to his neck and back areas." (Id. at ¶ 21).

### C.    Standards of Review

#### 1.    Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986).  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  Although the United States Supreme Court does "not require heightened fact

pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."
>
> * * *
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).

### 2.    *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the

court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D.    Discussion

#### 1.    "Care, Custody, Control and Safety Policy"

Plaintiff alleges that each of the Defendants violated the "Care, Custody, Control and Safety Policy;" however, as several Defendants correctly point out, "Plaintiff fails to provide a citation to any statute, regulation, or other source of legal rights which is known as the 'Care, Custody, Control and Safety Policy.'" (See, e.g., ECF Nos. 78 and 80 at p. 3). Plaintiff similarly fails to provide an appropriate citation to, or description of, any such policy in his memoranda of points and authorities in opposition to Defendants' motions to dismiss. (ECF Nos. 41 and 43, incorporated by reference in ECF Nos. 82-86). Without an appropriate citation to and/or description of the alleged policy Plaintiff claims Defendants violated, Plaintiff's claim based upon such an alleged policy must be dismissed.

#### 2.    Prisoner Transfer Act

Plaintiff also claims that each of the Defendants generally violated his rights under the Prisoner Transfer Act, 61 P.S. § 72, which has since been supplanted by its successor statute at

61 Pa.C.S. § 1151.[4]  In response, several Defendants argue that "[n]either the now-repealed 61 P.S. § 72 [n]or the successor statute 61 Pa.C.S. § 1151 contain any provisions which furnish a basis for Plaintiff to obtain relief." (ECF Nos. 74, 76, 78 and 80 at p. 3).  The Court agrees.  The Prisoner Transfer Act (the "Act") merely authorizes the transfer of inmates between, *inter alia*, state and county correctional institutions, either on a long-term or temporary basis.  It does not govern the manner in which an inmate is transported between institutions, nor does it prescribe any safety guidelines that must be followed during a transfer.  Thus, Plaintiff's attempt to recover damages under the Prisoner Transfer Act is misplaced, and his claims against Defendants based upon their alleged violation of said Act will be dismissed.

### 3.    Fourteenth Amendment Due Process

Against each Defendant, Plaintiff attempts to invoke the broader protection of the Fourteenth Amendment Due Process Clause by claiming that he was a pretrial detainee at BCP.[5]  However, although Plaintiff was at BCP awaiting trial on new charges, he was still serving a sentence at SCI-Forest as a result of a prior conviction.  Thus, Plaintiff was a convicted inmate at the time of the transport vehicle accident at issue, thereby rendering the Fourteenth Amendment inapplicable to Plaintiff's claims.  See Hall v. Berdanier, 2010 WL 2262045 at *1 n. 1 (M.D.Pa. June 1, 2010), citing Laza v. Reish, 84 F.3d 578, 580 (2d Cir. 1996).  Accordingly, Plaintiff's Fourteenth Amendment claims will be dismissed.

---

[4]

Plaintiff also specifically alleges that Defendants Henry and Jones violated due process protections allegedly provided by the Prisoner Transfer Act.  This claim will be addressed separately in this Court's discussion of Plaintiff's claims against those Defendants.

[5]

The Supreme Court has held that, while the Eighth Amendment protects prisoners confined as a result of a formal adjudication of their guilt, the Fourteenth Amendment Due Process Clause governs the rights of pretrial detainees.  City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 144 (1983); see also Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (1990)(Fourteenth Amendment applies when plaintiff is a pretrial detainee).

**4.** **Defendants Henry and Jones**

Plaintiff alleges that Defendants Henry and Jones "were not prepared" for his scheduled trial of April 14, 2008, "due to the unavailability of their witness, and they knew their case would be dismissed for lack of prosecution." (Second Amended Complaint, ECF No. 69, at ¶¶ 23, 26).  As a result, Plaintiff alleges that they "arbitrarily conspired with other officials of Bucks County, to make Plaintiff unavailable for trial, by having him transferred back to SCI-Forest" on April 10, 2008. (Id. at ¶ 27).  By these alleged actions, Plaintiff claims that Defendants Henry and Jones:  (i) violated due process protections allegedly provided by Pennsylvania's Prisoner Transfer Act, 61 P.S. § 1151;[6] and (ii) deprived him of access to the courts and due process of law in violation of his Fifth, Sixth, and Fourteenth Amendment rights. (Id. at ¶ 30).

Initially, with regard to Plaintiff's due process challenge to his transfer from BCP to SCI-Forest four days prior to his scheduled trial date, it is well-settled that "[a] prisoner has no vested right to be incarcerated in a particular penal institution, absent a justifiable and reasonable expectation of so remaining at the institution, created by an applicable state statute." DeMarco v. Hewitt, 481 F.Supp. 693, 695 (E.D.Pa. 1979), citing Meachum v. Fano, 427 U.S. 215, 225 (1976); see also Lair v. Fauver, 595 F.2d 911, 913 (3d Cir. 1979)(holding that a prisoner is entitled to certain due process protections before he can be transferred only if the applicable state law creates a justifiable expectation of remaining in a particular facility).

Here, Plaintiff claims that "[u]nder Pa. Prisoner Transfer Act, 61 P.S. § 72, a prisoner is entitled to Due Process protections," and "[a] pretrial detainee has a reasonable expectation of remaining at the county prison for trial purposes." (Second Amended Complaint, ECF No. 69, at ¶ 24-25).   However, in Cobb v. Aytch, 643 F.2d 946 (3d Cir. 1981), the Third Circuit held that the Prisoner Transfer Act does not confer an expectation that a prisoner will not be transferred, and "[a]bsent a state law expectation sentenced prisoners have no due process protection with

---

[6]

Plaintiff's statutory citation for the Prisoner Transfer Act is 61 P.S. § 72; however, 61 P.S. § 72 was repealed and replaced by its successor statute, 61 P.S. § 1151, effective October 13, 2009.

respect to the place of serving their sentences." Id. at 956.[7] Thus, Plaintiff's claim that Defendants Henry and Jones violated the Pennsylvania Prisoner Transfer Act, and his Fourteenth Amendment due process challenge to his transfer from BCP to SCI-Forest on April 10, 2008, will be dismissed.

Plaintiff's remaining claim against Defendants Henry and Jones is that they conspired with Bucks County officials to deprive him of access to the courts by having him transferred to SCI-Forest, thereby making him unavailable for his trial on the new charges in or around Bucks County. While inmates have the right to adequate, effective, and meaningful access to the courts, Bounds v. Smith, 430 U.S. 817, 828 (1977), the United States Supreme Court restricted who may bring an access to courts claim in Lewis v. Casey, 518 U.S. 343, 355 (1996). The Lewis Court held that, in order to state a claim for a denial of the right of access to the courts, a plaintiff must show actual injury. Id. In particular, the plaintiff must show that, as a result of the defendants' actions, he lost the ability to present an "arguably actionable claim" against the validity of his sentence under direct or collateral appeal or a claim challenging his conditions of confinement in a civil rights action. Id. at 356. The Third Circuit has further described the Lewis holding:

> to be able to bring a viable claim, the plaintiff inmates ha[ve] to show direct injury to their access to the courts. The Court explained that an inmate could show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or [he could show] that he had suffered arguably actionable harm that he wanted to bring before the courts, but was so stymied by the inadequacies ... that he was unable even to file a complaint.

Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

Here, Defendants Henry and Jones argue that Plaintiff has failed to present a "cognizable

---

[7]

Significantly, in an earlier decision rendered in the same case, the Third Circuit observed that the 1965 enactment of the Prisoner Transfer Act contained a provision prohibiting the transfer of prisoners awaiting trial without their consent; however, "this provision was eliminated by legislation in 1969, thereby removing the only restraint on the Deputy Commissioner's and county superintendents' otherwise broad grant of statutory discretion" regarding prisoner transfers. Cobb v Aytch, 539 F.2d 297, 300 (3d Cir. 1976).

injury as a result of [their] alleged conduct." (ECF No. 72 at p. 7).  The Court agrees.  Plaintiff simply makes the conclusory allegation that Defendants Henry and Jones conspired to make him unavailable for his trial in Bucks County by having him transferred back to SCI-Forest four days prior to his scheduled trial date.  However, Plaintiff fails to allege what, if any, direct injury resulted from his alleged inability to appear at his trial.  It is apparent from the Defendants' response that the trial was simply postponed.  (See ECF No. 72 at p. 7).  Plaintiff utterly fails to allege any actual harm that may have resulted from this postponement, other than that which may be implied from his supposition that Defendants Henry and Jones were unprepared for the originally scheduled trial due to the unavailability of a witness.   At most, Plaintiff alleges that Defendants Henry and Jones "set in motion a series of events that led to the [physical] injuries sustained by plaintiff" in the transport vehicle accident. (Second Amended Complaint, ECF No. 69, at ¶ 29).  This type of injury does not give rise to an actionable denial of access to courts claim.  Thus, the Plaintiff's denial of access to courts claim against Defendants Henry and Jones will be dismissed.

### 5. Defendants Etter, Canada, PTS, and Catalogne

#### a. State Actors

In their motions to dismiss, Defendants Etter, Canada, PTS, and Catalogne seek dismissal of Plaintiff's constitutional claims against them because Plaintiff has failed to allege that they were "state actors." (ECF Nos. 74, 76, 78 and 80, at p. 2).  Instead, they argue, Plaintiff "merely plead[s] that Bucks County employed PTS to transport Plaintiff between [BCP] and SCI-Forest;" "Catalogne was a PTS official;" "Canada drove negligently before being relieved by co-defendant Etter;" and "Etter was driving the van when it collided with an unspecified object." (Id.).

42 U.S.C. § 1983 authorizes a person to file a private cause of action against state actors for a deprivation of rights protected by a federal statute or the United States Constitution. Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). Section 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation,

> custom, or usage, of any State..., subjects, or causes to be subjected, any
> citizen of the United States ... to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be liable to the
> party injured in an action at law....

42 U.S.C. § 1983. In order to prevail on a claim under section 1983, a plaintiff must establish: 1) the violation of a federally protected constitutional or statutory right, 2) by state action or action under color of law. Jordan v. Rox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1264 (3d Cir. 1994) citing 42 U.S.C. § 1983 and Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 156 (1978).

"A private action is not converted into one under color of state law merely by some tenuous connection to state action." Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). The question "is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself." Id. When the actor is not a state or municipal official, but a private individual, a fact-specific inquiry must be made to determine whether the activity may nevertheless be deemed to be under color of law. Lugar v. Edmondson Oil Co., 457 U.S. 922, 939 (1982).

The Supreme Court has established a number of approaches to this general question of establishing state actorship. Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001) (characterizing the approaches as "facts that can bear on the fairness of such an attribution."). These approaches include: 1) the exclusive government function approach, see Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 157-58 (1978); 2) the joint participation or symbiotic relationship approach, see Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982); and 3) the nexus approach, see Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974). See Groman, 47 F.3d at 639 (summarizing the three approaches). The Brentwood decision directs that district courts must focus on the fact-intensive nature of the state action inquiry, mindful of its central purpose: to "assure that constitutional standards are invoked 'when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.'" Crissman v. Dover Downs Entertainment Inc., 289 F.3d 231, 238 (3d Cir. 2002) quoting Brentwood, 531 U.S. at 295. "What is fairly attributable [to the State] is a matter of

normative judgment, and the criteria lack rigid simplicity." Brentwood, 531 F.3d at 295.

For its part, the Third Circuit has instructed that a court may determine that a private individual is a state actor when "(1) he is a state official, (2) 'he has acted together with or has obtained significant aid from state officials,' or (3) his conduct is, by its nature, chargeable to the state." Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277 (3d Cir. 1999) quoting Lugar, 457 U.S. at 937. The state action inquiry is "necessarily fact-bound" and the test that the court uses to conduct the inquiry should be tailored to the facts of the case before it. Groman, 47 F.3d at 639 quoting Lugar, 457 U.S. at 939.

In the matter at hand, there is no factual record before this Court; instead, there is only Defendants' bald assertions that Plaintiff has failed to allege that they were state actors. In opposition to Defendants' motions to dismiss, Plaintiff argues that "[c]orporations operating 'private prisons' under contract, and their employees, act under color of state law, just like employees of government-operated jails and prisons." (ECF No. 41 at p. 4 (citations omitted)). As there has been no development of the record at this early stage of the proceeding, the state actor question may not be resolved at this time.

### b.     Eighth Amendment Claims

### i.     Defendants PTS and Catalogne

Plaintiff alleges that Defendants PTS and Catalogne "failed to provide a safe means of transportation by using a van that was poorly modified," and "failed to provide competent and responsible drivers for the operation of their vehicle." (Second Amended Complaint, ECF No. 69, at 37-38). As a result, Plaintiff claims that they "did knowingly, intentionally, and with deliberate indifference for the safety of the plaintiff, failed [sic] to provide him with safe and adequate transportation," in violation of his Eighth Amendment rights.

The test for an Eighth Amendment violation has both an objective and subjective component. Farmer v Brennan, 511 U.S. 825, 834 (1994). The objective component is met when an inmate alleges a deprivation that is "sufficiently serious." Id. (quotation omitted). For a claim based on failure to ensure safety, "the inmate must show that he is incarcerated under

11

conditions posing a substantial risk of serious harm," otherwise described as an "excessive risk to inmate health or safety." Id. at 834, 837. As to the subjective component, the plaintiff must show that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Here, Plaintiff complains that Defendants PTS and Catalogne failed to provide a safe means of transportation because the transport vehicle was not equipped with safety belts, was "poorly altered from its original design," and had steel cages that were "improperly welded, with angle iron that had sharp corners and edges." (Second Amended Complaint, ECF No. 69, at ¶¶ 34-36). In addition, Plaintiff alleges that Defendants PTS and Catalogne "failed to provide competent and responsible drivers for the operation of their vehicle." (Id. at ¶ 38). Several courts have found similar allegations insufficient to state an Eighth Amendment claim.

In Byerlein v. Hamilton, 2009 WL 3255478 (W.D.Mich. Oct. 7, 2009), the plaintiff inmate asserted an Eight Amendment claim to recover damages for injuries he sustained when the vehicle in which he was being transported from county jail crashed. According to the plaintiff's complaint, he was placed in the back of the transport vehicle with his hands cuffed behind his back and unrestrained by a seatbelt. The plaintiff alleged that, during transport, the driver of the vehicle was talking on a cell phone and ignored a road sign that an approaching bridge might be icy. Shortly thereafter, the driver lost control of the vehicle, swerved wildly through traffic, struck several guardrails, and crashed. The plaintiff was initially thrown face-first into the back steel-plated wall of the vehicle, then was thrown forward to the front door of the vehicle upon impact. As a result, he sustained head, knee, and back injuries. Before addressing the plaintiff's Eighth Amendment claim, the Byerlein court cited the following quote from Farmer, which is equally relevant to the instant case:

> The Eighth Amendment does not outlaw cruel and unusual "conditions;" it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk

that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Byerlein at ** 2-3, quoting Farmer, 511 U.S. at 837-38 (citations omitted); see also Whitley v. Albers, 475 U.S. 312, 319 (1986)("conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety"). The Byerlein court then proceeded to review the plaintiff's factual allegations and concluded that they "sound[ed] in negligence only and fail[ed] to rise to the level of a constitutional violation." Byerlein at * 3.

In Dexter v. Ford Motor Co., 92 Fed. Appx. 637 (10th Cir. 2004), an inmate asserted an Eighth Amendment claim seeking to recover damages for injuries he sustained when a van in which he was being transported to jail rolled over, ejecting him and causing him to suffer quadriplegia. Plaintiff claimed, *inter alia*, that prison officers were deliberately indifferent to his safety by failing to seatbelt him in the van. The Tenth Circuit Court dismissed plaintiff's claim, concluding that the failure to seatbelt him in the transport van did not pose a substantial risk of serious harm sufficient to meet the objective component of the test for an Eighth Amendment violation. Dexter, 92 Fed. Appx at 641. In so holding, the Dexter court made the following observations, which this Court finds pertinent to the case at hand:

> The risk of a motor vehicle accident is dependent on a host of factors unrelated to the use of seatbelts, *viz.*, vehicular condition, time of day, traffic, signage, warning lights, emergency circumstances, weather, road conditions, and the conduct of other drivers. The eventuality of an accident is not hastened or avoided by whether an inmate is seatbelted. While the severity of harm should an accident occur may be exacerbated by the failure to seatbelt, it is not directly occasioned by it and the other variables must be included in the risk equation. Thus, we conclude a failure to seatbelt does not, of itself, expose an inmate to risks of constitutional dimension.

92 Fed. Appx. at 641. See also Jones v Larmartiniere, 2009 WL 2136176 at * 2 (M.D.La. July 14, 2009)(dismissing inmate's Eighth Amendment deliberate indifference claim arising from transport vehicle accident, finding that "[a]lthough the plaintiff complains that [the driver] suffered with an unstated medical condition, that there were too many inmates placed into the vehicle, and that [the driver] operated the vehicle in a careless manner, it does not appear that

[the driver] intended to cause the plaintiff harm, knew that serious injury was substantially certain to occur, or was otherwise aware of a substantial risk of harm to the plaintiff's health or safety which the defendants ignored").

As in the foregoing cases, Plaintiff's allegations here sound in negligence rather than deliberate indifference.  In particular, Plaintiff cannot show that the absence of safety belts and the presence of "improperly welded" steel cages in the transport vehicle at issue exposed him to a substantial risk that an accident would more likely occur.  At most, such factors merely affected the severity of harm that might result if an accident did occur.  Thus, the alleged failure of Defendants PTS and Catalogne to provide safety belts and properly welded steel cages is more indicative of a lack of care or foresight, rather than a "conscious disregard of a substantial risk of harm."  Farmer, 511 U.S. at 839; Dexter, 92 Fed. Appx. at 641.  Similarly, in the absence of any allegation that Defendants PTS and Catalogne knew that Defendants Canada and Etter had prior histories of driving recklessly and/or causing accidents, Plaintiff's allegation that Defendants PTS and Catalogne "failed to provide competent and responsible drivers" does not show that they knowingly disregarded an excessive risk to inmate health or safety.  Farmer 511 U.S. at 837.  Accordingly, Plaintiff's Eighth Amendment deliberate indifference claim against Defendants PTS and Catalogne will be dismissed.

### ii.    Defendant Canada

Plaintiff claims that, after picking Plaintiff up from BCP, Defendant Canada "intentionally started speeding and driving recklessly, with total disregard for the safety and well-being of the plaintiff and others." (Second Amended Complaint, ECF No. 69, at ¶ 49).  In addition, Plaintiff alleges that "[u]pon approaching a traffic light or stop sign, [Defendant Canada] would deliberately slam on the brakes, causing the plaintiff to be tossed around violently in the back of the vehicle." (Id. at ¶ 50).  Plaintiff claims that the foregoing actions "amounted to use of excessive force" in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (Id. at ¶¶ 53-54).

Whether an inmate may maintain an Eighth Amendment claim against the driver of a

transport vehicle, based on allegations of reckless driving coupled with the lack of a safety restraint, is a question that has not been resolved by the Third Circuit Court. In general, courts from other Circuits have held that such allegations are insufficient to state an Eighth Amendment claim. See Bryant v. Downs, 2010 WL 2593564 at *6 (M.D.Fla. June 28, 2010)(dismissing Eighth Amendment claim, where inmate was transported in a van with no seat belts, and transport drivers drove recklessly by continually slamming on the brakes or taking turns too quickly, causing inmate to suffer shoulder and finger injuries); Grigsby v. Cotton, 2009 WL 890543 (S.D.Ga. Mar. 31, 2009)(dismissing Eighth Amendment claim, where inmate was transported in a bus that was not equipped with seatbelts, and driver exceeded speed limit and collided with a truck stopped at a red light, causing inmate lower-back and neck injuries); Seelye v. Fisher, 2007 WL 951604 (D.Minn. Mar. 29, 2007)(dismissing Eighth Amendment claim where plaintiff was handcuffed, waist-chained and leg-ironed and was not placed in a seat belt during transportation and where driver's "reckless" driving aggravated his pre-existing back and neck injuries); Jones v. Collins, 2006 WL 1528882 (S.D.Ill. June 1, 2006)(dismissing complaint under § 1915(a) where officer backed into an oncoming vehicle and plaintiff, who was not seat-belted, sustained injuries).

However, the Eighth Circuit, in particular, has upheld similar Eighth Amendment claims where it was apparent from the driver's alleged actions that he manifested deliberate indifference for the inmate's safety. For instance, in Brown v. Morgan, 1994 WL 610993 (8th Cir. Nov. 7, 1994), the Eighth Circuit court found that the plaintiff had sufficiently stated an Eighth Amendment claim where the officer transporting plaintiff refused to let him wear a seatbelt, refused to slow down despite plaintiff's requests to do so, then purposely sped up and taunted plaintiff for being scared under the circumstances. The court found that such allegations were sufficient to support a conclusion that the officer had intentionally placed plaintiff in a dangerous situation and manifested deliberate indifference for plaintiff's safety. Id. at * 1.

In Brown v. Fortner, 518 F.3d 552 (8th Cir. 2008), the court was faced with an analogous situation where the plaintiff alleged that the driver of a transport van refused the plaintiff's request for a seatbelt, and ignored the plaintiff's requests to slow down when he exceeded the

15

speed limit, followed the lead van too closely, crossed over double-yellow lines, and ignored no passing signs. The court found that the driver's conduct provided sufficient grounds to conclude that he "created a substantial risk of harm to [plaintiff]," and that he "knew of and disregarded the risk he created." 518 F.3d at 560.

Similarly, in Barela v. Romero, 2007 WL 2219441 (D.N.M. May 10, 2007), the plaintiff alleged that the he was shackled and transported in a van that was not equipped with seat belts, and the driver of the van drove at speeds of 85 to 90 miles per hour, then stopped erratically, causing plaintiff to suffer a fractured tail bone from being thrown about the van. Plaintiff alleged that he had "asked the [van driver] to stop the van, but [the transporting officers] just laughed at [him]." Id. at * 7. The court found this latter allegation to be most significant, because it showed that the officers "were actually aware of these conditions and were indifferent to the consequences of their actions." Id.

The common thread running through the foregoing cases upholding inmates' Eighth Amendment claims against transport drivers is that, in each case, the court found that the driver had consciously disregarded the inmate's pleas to stop driving recklessly and thereby manifested indifference for the inmate's safety. Thus, absent any allegation showing that the driver was consciously made aware that he was creating a substantial risk of serious harm, yet chose to ignore the risk, a claim of deliberate indifference cannot stand.

Here, despite Plaintiff's conclusory allegations that Defendant Canada "intentionally" drove recklessly with "total disregard" for Plaintiff's safety, Plaintiff has not alleged that he asked Defendant Canada to stop driving recklessly, and that such a request was consciously ignored. As a result, Plaintiff's allegations amount to no more than a claim of negligence or recklessness, which does not rise to the level of a constitutional violation. Accordingly, Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Canada will be dismissed.

### iii. **Defendant Etter**

Plaintiff alleges that after Defendant Etter relieved Defendant Canada as driver of the

transport vehicle, Defendant Etter "was still tired from lack of sleep, so that he was falling asleep behind the wheel, causing the vehicle to swerve all over the road," and "[a]t times, he would cross over the median line and go against oncoming traffic." (Second Amended Complaint, ECF No. 69, at ¶ 57). Plaintiff then alleges that, "[d]espite the complaints from the plaintiff and other passengers, to pull over and refresh his weariness, [Defendant Etter] continued to drive carelessly, with total disregard for the safety of the plaintiff and others," and ultimately caused the vehicle "to collide with the side of a hill, causing serious injuries to the plaintiff...." (Id. at ¶¶ 58-59).

Contrary to Plaintiff's allegations against Defendant Canada, the foregoing allegations specifically indicate that Defendant Etter was asked by Plaintiff and other passengers to take action to stop his reckless driving, yet he consciously chose to ignore their requests, thereby disregarding their safety. These allegations set forth sufficient grounds upon which one may conclude that Defendant Etter was made aware of and disregarded a substantial risk of harm to Plaintiff, thus manifesting deliberate indifference for Plaintiff's safety. As a result, Defendant Etter's motion to dismiss Plaintiff's Eighth Amendment claim against him will be denied.

### 6.    **Defendant Gubernick**

Plaintiff alleges that Defendant Gubernick, as BCP's Superintendent, "failed to train, supervise, or otherwise control, the actions/inactions of the employees of [BCP]," and "[e]ven after being informed of the violations to the plaintiff's rights and the risks to his safety, [Defendant Gubernick] failed to act to protect the plaintiff's rights, with total disregard for the safety and interests of the plaintiff." (Second Amended Complaint, ECF No. 69, at ¶¶ 71, 73). In addition, Plaintiff claims that Defendant Gubernick "may be held liable" for prison employees' actions allegedly taken "pursuant to Orders, Policy or Regulation." (Id. at ¶ 72).

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise

17

or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 11958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

Based on the foregoing standards, Plaintiff's allegations that Defendant Gubernick "failed to train, supervise or otherwise control" the actions of BCP employees, and that he "may be held liable" for BCP employees' actions taken pursuant to "Orders, Policy or Regulation," are insufficient to sustain a claim under 42 U.S.C. § 1983, as they fail to show his personal involvement in the alleged misconduct. The only affirmative part played by Defendant Gubernick in the alleged misconduct is that he authorized Plaintiff's transfer to SCI-Forest four days prior to his scheduled trial date. However, such action has no constitutional implications. See Meachum v. Fano, 427 U.S. 215, 225 (1976)("[a] prisoner has no vested right to be incarcerated in a particular penal institution, absent a justifiable and reasonable expectation of so remaining at the institution, created by an applicable state statute"). Accordingly, Plaintiff's Section 1983 claim against Defendant Gubernick will be dismissed.

### 7. **Defendant Haring**

Plaintiff alleges that "[o]n or around August 11, 2008, after advising officials of Bucks

18

County and PTS of America, that a civil action had been commenced against them,[8] and despite further protests, [he] was picked up at SCI-Forest... by agents of PTS of America, with total disregard for [his] safety and well-being..., for the return transportation to Bucks County, Pa." (Second Amended Complaint, ECF No. 69, at ¶ 78). Plaintiff then alleges that "[u]pon arriving at [BCP], [he] tried to relate his concerns regarding his safety and the civil action that was pending, to officials at [BCP], including, but not limited to, [Defendant Haring], but his requests were met with denial of responsibility and disregard of the issues raised...." (Id. at ¶ 79). As a result of Defendant Haring's alleged actions/inactions, Plaintiff claims that he suffered emotional distress "for fear of his safety."

There is little that may be gleaned from the foregoing allegations to establish any type of constitutional claim against Defendant Haring. It appears that Plaintiff is challenging Defendant Haring's actions/inactions that occurred after Plaintiff had already been transported to BCP by PTS. Thus, the Court fails to see how Defendant Haring could be found to have caused Plaintiff emotional distress "for fear of his safety," when the event giving rise to Plaintiff's safety concern had already taken place. See Evans v Rozum, 2009 WL 5064490 at * 7 (W.D.Pa. Dec. 17, 2009)(in the context of an Eighth Amendment deliberate indifference claim, "[t]he rule is that knowledge of the conditions **after** they ceased to exist... could not serve as a basis of liability")(emphasis in original). Moreover, even if it is assumed that Defendant Haring had prior knowledge of Plaintiff's safety concerns regarding PTS, Plaintiff fails to allege that Defendant Haring played any part at all in the decision to have PTS transport Plaintiff back to BCP. Thus, Plaintiff has failed to state an Eighth Amendment claim of deliberate indifference against Defendant Haring, and the same will be dismissed.

## 8.    Defendant Donnelly

Plaintiff alleges that Defendant Donnelly, as Sheriff of Bucks County, "failed to inspect

---

[8]

Plaintiff does not identify what civil action had allegedly been commenced, but the Court notes that the instant action was not commenced until October 14, 2008.

and approve equipment used by [Defendant PTS] for the transportation of the plaintiff;" "failed to inspect and evaluate the methods of operation used by [Defendant PTS] for the transportation of the plaintiff;" and "failed to exercise reasonable care to employ a competent and careful contractor, to do work which will involve risk of physical harm, unless it is skillfully and carefully done." (Second Amended Complaint, ECF No. 69, at ¶¶ 87-89). As a result, Plaintiff claims that he "suffered severe physical and emotional injuries." (Id. at ¶ 91).

Despite Plaintiff's attempt to construe the foregoing as a constitutional claim, it is clear from the allegations that the claim amounts to no more than one of negligence, which does not rise to the level of a constitutional violation. As a result, Plaintiff's claim against Defendant Donnelly will be dismissed.

### 9. Defendant Bucks County

Plaintiff alleges that "the commissioners for the Bucks County Prison Board, failed to adequately train, supervise, or otherwise control the actions/inactions of the Bucks County Prison Officials, when they (i) failed to protect the plaintiffs' Due Process rights; (ii) were indifferent to the Care, Custody, Control & Safety of the plaintiff." (Second Amended Complaint, ECF No. 69, at ¶ 97). To the extent this is intended to be a claim against Defendant Bucks County, it must fail.

Municipal liability under §1983 requires the plaintiff to prove the existence of a policy or custom that resulted in a constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978). Here, Plaintiff has failed to identify any policy or custom implemented by Bucks County that resulted in a constitutional violation. Moreover, a policy, custom or practice cannot arise from one incident, i.e., the alleged denial of Plaintiff's right safety. See, e.g., Turner v. City of Philadelphia, 22 F.Supp.2d 434, 437 (E.D.Pa. 1998), quoting Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985)("Absent unusual circumstances, 'proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'").

Simply stated, Plaintiff has failed to state a municipal liability claim against Defendant Bucks County upon which relief may be granted and any such claim will be dismissed.

### 10.  State Tort Claims

In addition to Plaintiff's constitutional claims, Plaintiff also asserts common law claims of negligence and intentional infliction of emotional distress against each individual Defendant. These claims are pendent state law claims under Pennsylvania law, over which this Court is not required to exercise jurisdiction absent the existence of a cognizable federal claim.  Since this Court has already dismissed Plaintiff's federal claims under 42 U.S.C. § 1983 against Defendants Henry, Jones, PTS, Catalogne, Canada, Gubernick, Haring, and Donnelly, this Court does not have an independent basis on which to exercise jurisdiction over Plaintiff's state law claims against these individuals.  As a result, Plaintiff's state law negligence infliction of emotional and negligence claims against these individual Defendants will be dismissed.

Notwithstanding the foregoing, however, since this Court has determined that Plaintiff has sufficiently stated an Eighth Amendment claim of deliberate indifference against Defendant Etter, Plaintiff's claims of intentional infliction of emotional distress and negligence against Defendant Etter will also survive at this stage of the proceeding.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JAIME OTERO,                        )
        Plaintiff              )
                            )
                            )      **C.A. 08-282 Erie**
    v.                          )
                            )      **Magistrate Judge Baxter**
THOR CATALOGNE, et al.,             )
        Defendants.           )

## ORDER

AND NOW, this 27th day of September, 2010,

IT IS HEREBY ORDERED as follows:

    1.    The motion to dismiss filed by Defendants Henry, Jones, Gubernick, Haring, Donnelly, and Bucks County [Document # 71] is GRANTED, and said Defendants shall be terminated from this case;

    2.    The motion to dismiss filed by Defendant Etter [Document # 73] is GRANTED in part and DENIED in part, as follows:

        a.    Plaintiff's claims based upon the "Care, Custody, Control Safety Policy," the Prisoner Transfer Act, and the Fourteenth Amendment Due Process Clause are dismissed;

        b.    Plaintiff's Eighth Amendment deliberate indifference claim, and his pendent state law claims of negligence and intentional infliction of emotional distress, are allowed to proceed;

    3.    The motion to dismiss filed by Defendant Canada [Document # 75] is GRANTED, and Defendant Canada shall be terminated from this case;

    4.    The motion to dismiss filed by Defendant PTS [Document # 77] is GRANTED, and Defendant PTS shall be terminated from this case; and

    5.    The motion to dismiss filed by Defendant Catalogne [Document # 79] is GRANTED, and Defendant Catalogne shall be terminated from this case.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge